**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHEN LI,                 ) | |
|                     ) | |
|       Plaintiff,     ) | |
|                     ) | |
|      v.                 ) | Case No. 1:25-cv-10772 |
|                     ) | |
| THE PARTNERSHIPS and UNINCORPORATED  ) | Jury Trial Demanded |
| ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," ) | |
|                     ) | |
|       Defendants.    ) | |
|                     ) | |
|                     ) | |

## COMPLAINT

This is an action for patent infringement in which Chen Li ("Plaintiff") accuse the Individuals, Partnerships, and Unincorporated Associations on Schedule A ("Defendants") of infringing U.S. Patent No. ▮▮▮▮ (the "Patent-in-Suit" or the ▮▮▮▮▮") under 35 U.S.C. §271, alleging as follows.

## JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action under the provisions of the Patent Act, 35 U.S.C. § 1, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court under 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores and URLs operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold ██████ products featuring the Patent-in-Suit (collectively, the "Infringing Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale Infringing Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Infringing Products to unknowing consumers. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' infringement of its Patent-in-Suit, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Plaintiff has been and continues to be irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its Patent-in-Suit as a result of Defendants' actions and seeks injunctive and monetary relief.

## THE PARTIES

**Plaintiff**

4. Plaintiff is the inventor of the ██████████ who lives in the People's Republic of China.

2

5.      The ▮▮▮▮▮ is being infringed by a cabal of foreign counterfeiters with intent on exploiting unknowing online consumers. This infringing behavior harms Plaintiff.

6.      Plaintiff has been operating its own online store for about two years. Its online store is engaged in the business of manufacturing, distributing, and retailing ▮▮▮▮ products throughout the world, including within the Northern District of Illinois (collectively, "Plaintiff's Products).

7.      Plaintiff is the owner of all rights, title, and interest in and to the ▮▮▮▮ . The ▮▮▮▮ is valid, subsisting, and enforceable.

8.      Plaintiff sells products that include the design protected by the ▮▮▮▮ .

9.      Plaintiff's Products have been widely promoted, both in the United States and throughout the world. The whole of the consuming public recognizes Plaintiff's Products as originating with Plaintiff, but also recognizes that Plaintiff's Products sold in the United States originate exclusively from Plaintiff.

10.     As of the date of this filing, Plaintiff's Products are sold throughout the nation including on third-party platforms.

11.     Plaintiff maintains quality control standards for all of Plaintiff's products, including those sold under the ▮▮▮▮ .

12.     Plaintiff's Products under the ▮▮▮▮ have generated significant revenue for Plaintiff over the years. Plaintiff's Products have become a symbol of excellence, and an expectation of quality uniquely associated with Plaintiff.

13.     The ▮▮▮▮ have never been assigned or licensed to any of the Defendants in this matter.

14.     Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, marketing, and otherwise promoting products covered by the ▮▮▮▮▮.

15.     Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the ▮▮▮▮▮, including its exclusive right to use and license such intellectual property.

**The Defendants**

16.     Defendants, identified in Schedule A of this Complaint (Sealed), are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued under Federal Rule of Civil Procedure 17(b).

17.     On information and belief, Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to sell Infringing Products. The Defendant Internet Stores share unique identifiers, such as common design elements, such as the same or similar Counterfeit Products they offer for sale, similar Counterfeit Product descriptions, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Counterfeit Products and volume sales discounts, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction or occurrence. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope

and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## **PLAINTIFF'S PATENT**

18.     On ███████, United States Design Patent No. ████████████████ was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "████████." A true and accurate copy of the ████ Patent is attached as Exhibit 1 (Sealed).

19.     Plaintiff is the lawful owner of ████ Patent . Plaintiff is the owner and assignee of all substantial rights, title and interest in the ████ Patent, including the right to bring this action and enforce the ████ Patent against infringers, and to collect damages for all relevant times.

20.     Plaintiff sells products that include the design protected by the ████ Patent, herein referred to as the "Design."

| Patent No. | Claimed Design | Issue Date |
|---|---|---|
| ████ | ████████████████████████ | ████████ |





## **DEFENDANTS' UNLAWFUL CONDUCT**

21.     Plaintiff has identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Infringing Products to consumers in this judicial district and throughout the United States. According to U.S. Customs and Border Protection, most infringing products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 3**). The bulk of infringing products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights ("IPR") violations. *Id.* Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id.* Legislation was previously introduced in the U.S. Senate that would have allowed CBP to seize articles that infringe design patents, thus closing a loophole exploited by infringers.[1] However, no such law has been enacted. Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.*

22.     Third-party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the*

---

[1] *See* Press Release, U.S. Senator Thom Tillis, *Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses* (Dec. 5, 2019), https://www.tillis.senate.gov/2019/12/tillis-coons-cassidy-hirono-introduce-bipartisan-legislation-to-seize-counterfeit-products-and-protect-american-consumers-and-businesses.

*Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods," prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and infringers." **Exhibit 4** at 186–87.

23.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Infringing Products to residents of Illinois.

24.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an

authorized retailer. Plaintiff has not licensed or authorized Defendants to use the ████████ and none of the Defendants are authorized retailers of genuine Plaintiff's Products.

25.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

26.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

27.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Infringing Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

28. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

29. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the ███████. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois over the Internet.

30. Defendants' infringement of the ███████ in connection with making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful.

31. Defendants' infringement of the ███████ in connection with making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into

11

the United States for subsequent sale or use of Infringing Products into Illinois, is irreparably harming Plaintiff.

## COUNT ONE

### INFRINGEMENT OF UNITED STATES DESIGN PATENT
### (35 U.S.C. § 271)

32.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33.     Plaintiff's ▇ Patent is valid and enforceable.

34.     To the extent identified in **Schedule A**, Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe directly and/or indirectly the Design claimed in Plaintiff's ▇ Patent. *See* Exhibit 2 (Sealed).

35.     The Defendants, in violation of 35 U.S.C. § 271, have been and are now infringing the ▇ Patent in the State of Illinois, in this judicial district, and other jurisdictions in the United States by selling or offering to sell the Infringing Products. Defendants are directly infringing, literally infringing, and/or infringing the ▇ Patent under the doctrine of equivalents.

36.     The Defendants have willfully and deliberately infringed the ▇ Patent. The Defendant's infringement of the ▇ Patent is obvious and notorious. The Defendants have no good faith basis that the accused Products do not infringe the ▇ Patent. The willful infringement, without regard to Plaintiff's patent rights, constitute egregious and wanton conduct sufficient to establish willful infringement under 35 U.S.C. § 284.

37.     By reason of the ongoing and continuous infringement of the ▇ Patent by the Defendants, Plaintiff is entitled to the entry of permanent injunction enjoining the Defendants from further infringing Plaintiff's patent rights, pursuant to 35 U.S.C. § 283.

38.     Plaintiff has suffered, and is continuing to suffer, damages as the Defendants' infringement of the ▮▮▮▮▮▮, and Plaintiff is entitled to compensation, including Defendants' profits, and other monetary relief to the fullest extent allowed by law, including attorneys' fees, pursuant to 35 U.S.C. §§ 284, 285, and 289.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.  A judgment against Defendants as to infringement of the claims of the ▮▮▮▮▮▮.

2.  Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Product;

    b.  aiding, abetting, contributing to, or otherwise assisting anyone in making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Product; and

    c.  effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b).

3.  Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, Temu, and SHEIN (collectively, the "Third Party Providers") shall disable and cease displaying any

advertisements used by or associated with Defendants in connection with the sale of the Infringing Products;

4. That Plaintiff be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of the Plaintiff's ███████, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

5. That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of the ███████ be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

6. In the alternative, that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of the ██████, pursuant to 35 U.S.C. § 289;

7. That Defendants, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court;

8. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

9. Award any and all other relief that this Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a jury for all issues so triable.

Dated: September 8, 2025                              Respectfully submitted,

*/s/ Bruce Zeason*
Bruce Zeason

14

TZZ Law
99 Park Avenue, Suite 1100,
New York, NY 10016
tzzlawip@gmail.com

*ATTORNEYS FOR PLAINTIFF*